UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JAMES OSAKWE WHITE,

                Plaintiff,

v.

CITY OF GRAND RAPIDS et al.,

                Defendants.

_____/

Case No. 1:19-cv-877

Honorable Paul L. Maloney

**OPINION**

This is a civil rights action brought by a pretrial detainee under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant City of Grand Rapids. The Court will stay the action against Defendants Brown and Pierson.

**Discussion**

I.      **Factual allegations**

Plaintiff is presently detained and awaiting trial at the Kent County Correctional Facility (KCCF) on charge of assaulting/resisting/obstructing a police officer, causing injury,

Mich. Comp. Laws § 750.81d(2). Plaintiff sues the City of Grand Rapids and Grand Rapids Police Department (GRPD) Officers Kenneth Brown and Briana Pierson.

Plaintiff alleges that, on August 3, 2019, the GRPD received a 911 hang-up call. The dispatcher told police that a male and female could be heard arguing on the call. Defendants Brown and Pierson were dispatched to respond to the address from which the call was made, 756 Richmond N.W. According to Defendant Pierson's police report, when the officers arrived, Pierson went to the back of the building while Defendant Brown went to the front. The only unit with lights visible was Unit 1A. Pierson stated that she "stood on the porch and could hear a male arguing with someone inside [but she] could not understand what exactly was being said." (Pierson Police Report, ECF No. 1-1, PageID.10; *see also* Compl., ECF No. 1, PageID.4.) Pierson began knocking on the back door, in an attempt to get someone to come to the door. (ECF No. 1-1, PageID.10.)

At the same time, Defendant Brown checked the front door and found Plaintiff sleeping in the hallway. Defendant Pierson joined Brown at some point. Plaintiff alleges that Defendant Brown kicked him awake and that he told the officers that he had nothing to do with the 911 call and did not want to talk. Plaintiff alleges that he then walked away. He claims that, when he attempted to leave, Defendants used excessive force against him and falsely charged him with the offense for which he is in custody. (Compl., ECF No. 1, PageID.4.)

In contrast, Defendants reported that Plaintiff woke up when they approached him. They asked Plaintiff to identify himself, to which Plaintiff falsely responded, "Mike." (Pierson & Brown Police Reports, ECF No. 1-1, PageID.10, 11.) Plaintiff, however, refused to supply his full and truthful name and gave signs that he intended to flee. Plaintiff then attempted to leave, suggesting that he would wake up the people in Apartment 1A. Brown instructed Plaintiff to sit

2

back down and provide his name first. Plaintiff again responded, "Mike." (Brown Police Report, ECF No. 1-1, Page.ID 11.) Defendant Brown attempted to grab Plaintiff's wrist in order to place him in handcuffs, but Plaintiff pulled away and fled. Brown chased him and was able to grab Plaintiff outside the front door, but Plaintiff again slipped away. Defendant Brown repeatedly ordered Plaintiff to stop and continued chasing him. Plaintiff ran across Alpine Avenue, and Defendant Brown pursued Plaintiff. Brown eventually caught Plaintiff in an alley, as Plaintiff was attempting to climb a chain-link fence. Brown tackled Plaintiff, pulling him away from the fence and onto the ground. Once Plaintiff had been handcuffed by a newly arrived officer, Defendant Brown realized that he had suffered a dislocated knuckle on his right pinky finger and multiple abrasions during his attempts to stop and arrest Plaintiff. (*Id.*)

During the takedown, Plaintiff suffered an abrasion to his left knee. Plaintiff alleges Defendants denied him medical care. He attaches his medical records showing that, both upon his arrival at the jail on August 3, 2019, and at a medical call-out on August 6, 2019, KCCF medical providers recorded that Plaintiff had an abrasion on his knee. (Ex. to Compl., ECF No. 4, PageID.31, 34.) When he saw the KCCF medical provider on August 6, Plaintiff received wound care and information about self-care and follow-up. (*Id.*, PageID.35.)

Plaintiff seeks compensatory and punitive damages for the physical and emotional injuries he suffered during the use of excessive force. He also seeks damages for his allegedly wrongful arrest, prosecution, and pretrial detention.

## II.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While

a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III.    Municipal Liability

Plaintiff sues the City of Grand Rapids, contending that it is responsible for the actions of its employees' allegedly unconstitutional conduct.

A local government such as a municipality or county "cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, a municipality may only be liable under § 1983 when its policy or custom causes the injury, regardless of the form of relief sought by the plaintiff. *Los Angeles Cty. v. Humphries*, 562 U.S. 29, 35-37 (2010) (citing *Monell*, 436 U.S. at 694 (1974)). In a municipal liability claim, the finding of a policy or custom is the initial determination to be made. *Doe v. Claiborne Cty.*, 103 F.3d 495, 509 (6th Cir. 1996). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving,* 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508-509.

A "policy" includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the policymaker for the municipality. *Monell*, 436 U.S. at 690. The Sixth Circuit has explained that a "custom"

> for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law. In turn, the notion of "law" includes deeply embedded traditional ways of carrying out state policy. It must reflect a course of action deliberately chosen from among various alternatives. In short, a "custom" is a "legal institution" not memorialized by written law.

*Claiborne Cty.*, 103 F.3d at 507 (citations and quotations omitted).

Plaintiff has not asserted that an official policy or custom led to his injuries. Plaintiff's sole allegation is that the City is responsible for the actions of two of its employees. In

other words, Plaintiff relies solely on a theory of respondeat superior, which fails to state a claim under § 1983. *Monell*, 436 U.S. 658, 691.

Where a plaintiff fails to allege that a policy or custom existed, dismissal of the action for failure to state a claim is appropriate. *Rayford v. City of Toledo*, No. 86-3260, 1987 WL 36283, at *1 (6th Cir. Feb. 2, 1987); *see also Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of § 1983 action when plaintiff allegation of policy or custom was conclusory, and plaintiff failed to allege facts tending to support the allegation). Therefore, the Court will dismiss Defendant City of Grand Rapids because Plaintiff has failed to state a claim upon which relief may be granted.

### IV.     Abstention

According to the complaint, Plaintiff's lawsuit challenges the facts underlying his arrest and prosecution for assaulting/resisting/obstructing a police officer, causing injury. In addition, his claim that Defendants Brown and/or Pierson used excessive force depends substantially on whether he, in fact, assaulted, resisted or obstructed Defendant Brown.

Generally, federal courts should abstain from deciding a matter that would interfere with pending state proceedings involving important state matters unless extraordinary circumstances are present. *Younger v. Harris*, 401 U.S. 37, 44-55 (1971). This principle is based on notions of equity and comity, "and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id.* at 44.

*Younger* generally permits a federal court to abstain from considering a plaintiff's claims where: (1) the state proceedings are ongoing; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal

questions. *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

Exceptions to the *Younger* abstention doctrine have been recognized in the following

circumstances: (1) where "the state proceeding is motivated by a desire to harass or is conducted

in bad faith," *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611 (1975); (2) where "[a] challenged statute

is flagrantly and patently violative of express constitutional prohibitions," *Moore v. Sims*, 442 U.S.

415, 424 (1979) (quoting *Huffman*, 420 U.S. at 611); and (3) where there is "an extraordinarily

pressing need for immediate federal equitable relief," *Kugler v. Helfant*, 421 U.S. 117, 125 (1975).

These exceptions have been interpreted narrowly. *Zalman v. Armstrong*, 802 F.2d 199, 205 (6th

Cir. 1986).

The three factors supporting *Younger* abstention are present in this case. First,

Plaintiff's claims about the reasonableness of his arrest, prosecution, and detention relate to a

criminal case that is ongoing. The reasonableness of the force used by Defendants depends on

whether Plaintiff resisted or obstructed arrest and/or caused injury to Defendant Brown. Second,

Plaintiff's criminal proceedings involve important state interests. *See Younger*, 401 U.S. at 43

(recognizing that when the state proceeding is criminal in nature, the policy against federal

interference is "particularly" strong); *see also Parker v. Turner*, 626 F.2d 1, 8 (6th Cir. 1980)

("*Younger* established a near-absolute restraint rule when there are pending state criminal

proceedings."). Third, the state court proceedings provide an adequate opportunity for Plaintiff to

raise his constitutional challenges to the reasonableness of his arrest and prosecution. "'Abstention

is appropriate unless state law *clearly bars* the interposition of the constitutional claims.'" *Am.*

*Family Prepaid Legal Corp. v. Columbus Bar Ass'n*, 498 F.3d 328, 332 (6th Cir. 2007) (quoting

*Squire v. Coughlan*, 469 F.3d 551, 556 (6th Cir. 2006)). State law does not clearly bar the

presentation of Plaintiff's constitutional claims in his criminal proceedings. Plaintiff may raise his

claims about the reasonableness of the arrest, detention and prosecution, and, if the trial court denies or otherwise fails to consider Plaintiff's constitutional claims, Plaintiff may exercise his right to an appeal under Michigan law.

Abstention is therefore appropriate in the absence of one of three exceptions to the Younger abstention doctrine: (1) "the state proceeding is motivated by a desire to harass or is conducted in bad faith," *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611 (1975); (2) "the challenged statute is flagrantly and patently violative of express constitutional prohibitions," *Moore v. Sims*, 442 U.S. 415, 424 (1979) (quoting *Huffman*, 420 U.S. at 611); or, (3) there is "an extraordinarily pressing need for immediate federal equitable relief." *Kugler v. Helfant*, 421 U.S. 117, 125 (1975). These exceptions have been interpreted narrowly. *Zalman v. Armstrong*, 802 F.2d 199, 205 (6th Cir. 1986).

Plaintiff's allegations do not implicate any of the *Younger* exceptions. He does not allege bad faith, harassment, a flagrantly unconstitutional statute, or an extraordinarily pressing need for federal relief. Thus, the *Younger* abstention doctrine applies here. *Cf. Michel v. City of Akron*, 278 F. App'x 477, 479 (6th Cir. 2008) (affirming application of *Younger* abstention to claim that defendants violated the plaintiff's Fourth Amendment rights when searching his property). Consequently, so long as Plaintiff's criminal proceedings remain pending in state court, the Court will not review the use of force exercised by Defendant Brown or the validity of Plaintiff's arrest and prosecution by Defendants Brown and Pierson.

*Younger* abstention sometimes warrants dismissal of a claim without prejudice. However, where the only relief sought by the plaintiff is damages, the Court "must stay the case instead of exercising its discretion to dismiss the case." *Nimer v. Litchfield Twp. Bd. of Trs.*, 707 F.3d 699, 702 (6th Cir. 2013). "This is because the United States Supreme Court has held that

8

'[u]nder our precedents, federal courts have the power to dismiss or remand cases based on abstention principles *only where the relief being sought is equitable or otherwise discretionary*.'" *Id.* (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 731 (1996)); *see also Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1079 (6th Cir. 1998) (Moore, J., concurring in part) (finding that "[w]hile *Quackenbush* involved *Burford* abstention, its reasoning applies with equal force to *Younger* abstention").

Plaintiff seeks only damages. He does not seek equitable or declaratory relief. Consequently, "*Quackenbush* prevents the [Court] from even exercising its discretion and deciding to dismiss the case." *Id.* Accordingly, the Court will stay the claims against Defendants Brown and Pierson.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's claims against Defendant City of Grand Rapids will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will stay the complaint against Defendants Brown and Pierson.

An order consistent with this opinion will be entered.


Dated: ___December 19, 2019___                    /s/ Paul L. Maloney_____
                                                   Paul L. Maloney
                                                   United States District Judge