UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES WHITE #270943,

                Plaintiff,                             Hon. Paul L. Maloney

v.                                               Case No. 1:19-cv-877

CITY OF GRAND RAPIDS, et al.,

                Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment. (ECF No. 61).   Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be granted and this action terminated.[1]

## BACKGROUND

Plaintiff initiated this action against the City of Grand Rapids and three of its police officers: Kenneth Brown, Briana Pierson, and Nathan Mead.   In his amended complaint (ECF No. 18) Plaintiff alleges the following.

On the morning of August 3, 2019, the Grand Rapids Police Department "got a 911 hang up call" during which a man and woman were heard arguing.   Officers Brown and Pierson were dispatched to 756 Richmond St. to investigate.   Upon arriving at this location, Pierson "heard a male arguing with someone inside."   Officers Brown and

---

1   Defendants have also moved for oral argument.   (ECF No. 69).   Because oral argument is unnecessary to resolve the present motion, Defendants' motion for oral argument is denied.   W.D. MICH. LCIVR 7.3(d).

Pierson then proceeded to the "common area hallway entryway" where they discovered Plaintiff asleep on the floor.   The officers woke Plaintiff and asked him "if he lived in the building."   Plaintiff responded that he did not reside in the building but was instead "visiting friends."   Plaintiff attempted to "walk past the officers to get the people in apartment 1A," presumably to establish that he had permission to sleep in the hallway. Before Plaintiff could do so, however, he was assaulted and illegally arrested.   Officer Mead later arrived at the scene and refused Plaintiff's request for medical attention.

Plaintiff was subsequently transported to the Kent County Jail and charged with assaulting, resisting, or obstructing a police officer.   Plaintiff alleges that Defendants: (1) arrested him without lawful authority; (2) used excessive force; (3) maliciously prosecuted him; and (4) denied him medical treatment.   Plaintiff seeks $4,000,000 in damages.   Defendants now move for summary judgment.   Plaintiff has responded to the motion.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   Whether a fact is "material" depends on "whether its resolution might affect the outcome of the case."   *Harden v. Hillman*, - - - F.3d - - -, 2021 WL 1257802 at *4 (6th Cir., Apr. 6, 2021).

A party moving for summary judgment can satisfy its burden by demonstrating that the non-moving party, "having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case."  *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).  Once the moving party makes this showing, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial."  *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).  The existence of a mere "scintilla of evidence" in support of the non-moving party's position, however, is insufficient.  *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).

While the Court must view the evidence in the light most favorable to the non-moving party, that party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Amini*, 440 F.3d at 357.  The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial."  *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).  Likewise, the non-moving party cannot merely "recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof."  *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353-54 (6th Cir. 2004).

Accordingly, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Daniels*, 396 F.3d

at 735. Stated differently, the "ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Harden*, 2021 WL 1257802 at *4.

## ANALYSIS

### I. Unlawful Arrest

Plaintiff was arrested following an encounter with Defendants Brown and Pierson. Plaintiff alleges that Defendants subjected him to unlawful arrest. The incident was captured on Defendants' body cameras, however, and reveals that Defendants are entitled to summary judgment.

Absent a valid warrant, the seizure of a person is lawful only in certain circumstances. Other than when in the home, an individual can be arrested without a warrant if there exists probable cause to believe that the individual has committed or is committing a criminal offense. *See, e.g., Graves v. Mahoning County*, 821 F.3d 772, 776 (6th Cir. 2016). When assessing whether there existed probable cause to support an arrest, the Court must consider the totality of the facts and circumstances possessed by the arresting officer at the time of the arrest. *See Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008). Probable cause does not require "convincing" evidence, but merely evidence "sufficient to lead a reasonable officer to conclude that the arrestee has committed or is committing a crime." *Ibid.* While probable cause "is not a high bar," *District of Columbia v. Wesby*, 138 S.Ct. 577, 586 (2018), a "mere suspicion of criminality" is insufficient. *Bornhorst*, 513 F.3d at 511.

4

Where a police officer lacks probable cause, but possesses a "reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity," the officer may briefly detain the person to investigate her suspicion.   *United States v. Jones*, 673 F.3d 497, 501-02 (6th Cir. 2012).   This is generally referred to as a *Terry* stop.   When analyzing the lawfulness of a purported *Terry* stop, the Court first assesses whether the initial detention was proper.   *See United States v. See*, 574 F.3d 309, 313 (6th Cir. 2009).   If the initial detention was proper, the Court must then consider "whether the degree of intrusion was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and surrounding circumstances."   *Ibid*.

To satisfy this latter element, the officer must have "diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly."   *Foster*, 376 F.3d at 585.   An otherwise permissible *Terry* stop that "lasts longer than is necessary to effectuate the purpose of the stop" constitutes, in the absence of probable cause, an unlawful arrest in violation of the Fourth Amendment.   *See Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 827 (6th Cir. 2007).

At 3:13 a.m. on August 3, 2019, a call was placed to 911.   (ECF No. 62, Exhibit F).   The caller does not speak to the 911 operator, but instead is heard arguing with a man who she orders to "get the fuck up out of here right now."   The pair continue to argue and the woman again tells the man to "get the fuck up out of here and go sleep in the hallway."   The connection is then terminated.   Officers are then dispatched to 756 Richmond Street.   Defendants Brown and Pierson arrive at this location, a two-story

building with four apartments.   Brown and Pierson were both wearing body cameras and their activities, including their encounter with Plaintiff, was recorded.   (ECF No. 62, Exhibit F).

Pierson arrived at this location first and saw lights on inside one of the apartments.   Pierson knocked on an exterior door, but the occupants refused to answer the door.   Pierson and Brown then proceeded to an interior area of the building containing entrances to the various apartments.   Upon entering this area, Defendants observed Plaintiff laying down in the hallway appearing to be asleep.   Brown and Pierson both thought that Plaintiff could possibly have been the man that the 911 caller was ordering to exit her apartment.   Accordingly, the officers identified themselves and began to speak with Plaintiff.   The conversation between Plaintiff and Defendants, as depicted on Defendants' body cameras, was as follows:

| | |
|---|---|
| Brown: | What's up man? |
| Plaintiff: | I was, I was just . . . a friend of mine stays downstairs.   I was just sitting here. |
| Pierson: | Are they fighting tonight? |
| Plaintiff: | No.   I don't know. |
| Brown: | Which apartment does your friend stay in? |
| Plaintiff: | Uh, downstairs. |
| Brown: | Okay, do you know which one it is?   On the right?   On the left? |
| Plaintiff: | Bottom right. |
| Brown: | Okay.   What, you don't live there? |

| | |
|---|---|
| Plaintiff: | No.   I just stay there – I don't stay there. |
| Pierson: | So why are you staying up here? |
| Plaintiff: | I was just . . . I just went down there because they were yelling and fighting. |
| Brown: | What's your name? |
| Plaintiff: | Mike. |
| Brown: | Is that short for Michael? |
| | [Plaintiff begins putting on his shoes] |
| Plaintiff: | Yeah.   What happened?   Is there a problem here? |
| Brown: | We got called here because someone was fighting, so we just want to make sure – |
| Plaintiff: | Oh no, no, that wasn't me. |
| Brown: | Where do you stay at? |
| Plaintiff: | Oh, I'm right down by Seventh. |
| Brown: | You're what? |
| Plaintiff: | Seventh. |
| Brown: | Seventh and what, Alpine? |
| Plaintiff: | Yeah. |
| Brown: | Okay. |
| | [Plaintiff begins to stand up] |
| Brown: | So, your first name's Michael?   Hey, just stay where you're at, man. |
| Plaintiff: | What's going on, sir? |

7

Brown:        I'm just asking you your name right now.   You're sleeping
              in the hallway of an apartment you don't live in.

Plaintiff:    I mean . . . downstairs.   This is their place and stuff.

Pierson:      Can you get them to come to the door then?

Plaintiff:    Yeah, yeah, yeah, yeah.

Brown:        Hang on.   Hang on for me.   Let me get your name first,
              then we can do that, okay?

At this point, Plaintiff stands up and begins to walk away from Officer Brown who attempts to restrain Plaintiff by the arm.   Plaintiff resists Brown's action, however, and fled out of the building.   Contrary to Defendants' arguments, Plaintiff was, in fact, seized for Fourth Amendment purposes the moment Defendant Brown attempted to restrain Plaintiff by the arm.   *See, e.g., California v. Hodari D.*, 499 U.S. 621, 626 (1991) (recognizing that a person is seized for Fourth Amendment purposes where an officer uses an "application of physical force to restrain movement, even when it is ultimately unsuccessful").   The question, therefore, is whether this seizure of Plaintiff was lawful.

Defendants' decision to approach Plaintiff and briefly question him was justified under the circumstances.   Defendants were aware that somebody in the building had called 911 during which the caller could be heard arguing with a man and ordering him to get out of her apartment.   Shortly thereafter, Defendants encountered Plaintiff loitering in a hallway outside of the apartment from which the 911 call was made. Defendants' questioning of Plaintiff was brief and intended to determine if Plaintiff had permission to lay in the hallway of a private residence or whether he was instead involved with or had knowledge of the circumstances giving rise to the 911 call.   In this

8

respect, Plaintiff acknowledged that he had recently exited one of the building's apartments because there was a fight taking place.

Plaintiff, however, rather than cooperate and provide his name as lawfully requested, decided to obstruct Brown's investigative efforts.   At that point, Defendants possessed probable cause to arrest Plaintiff for violation of Michigan Compiled Laws § 750.81d(1).   *See, e.g., Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010) ("in Michigan, one can be convicted under [Michigan Compiled Laws] § 750.81d(1) simply for a 'knowing failure to comply with a lawful command'").

Simply put, Defendants initial engagement with Plaintiff was lawful as part of their efforts to investigate the origins and circumstances surrounding the 911 call. Plaintiff's subsequent refusal to comply with a lawful command by Defendant Brown, as part of his investigatory efforts related to the 911 call, constituted probable cause for Brown's seizure of Plaintiff.   Accordingly, the undersigned recommends that Defendants Brown and Pierson are entitled to summary judgment on Plaintiff's unlawful arrest claim.

## II.    Use of Excessive Force

After disengaging from Defendant Brown, Plaintiff fled the building with Defendants Brown and Pierson in pursuit.   Plaintiff was tackled and detained by Brown following a brief chase.   Plaintiff alleges that Brown, by tackling him, violated his Fourth Amendment right to be free from excessive force.

9

When making an arrest, the police "have the right to use some degree of physical coercion or threat thereof to effect it." *Wright v. City of Euclid, Ohio*, 962 F.3d 852, 865 (6th Cir. 2020) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). To determine whether an officer's use of force in effecting an arrest violated the Fourth Amendment, the Court must assess "whether the officers' actions were objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Wright*, 962 F.3d at 865 (quoting *Graham*, 490 U.S. at 397).

When undertaking this analysis, three factors are relevant: (1) the severity of the crime in question; (2) whether the subject poses an immediate threat to the safety of the officers and others; and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Wright*, 962 F.3d at 865 (citations omitted). Finally, the Court must undertake this analysis "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Ibid.* (citations omitted). Even interpreted in Plaintiff's favor, the evidence compels the conclusion that Defendants are entitled to summary judgment.

Plaintiff refused to comply with Defendant Brown's attempt to detain him, choosing instead to physically resist and run away. Thus, Plaintiff was actively resisting arrest and attempting to flee. *See, e.g., Rudlaff v. Gillispie*, 791 F.3d 638, 641-42 (6th Cir. 2015) (observing that "active resistance includes physically struggling with, threatening, or disobeying officers"). When Plaintiff resisted arrest and fled from Defendants, not only had he committed the crime of obstruction, there was also an open question whether Plaintiff was involved in a potential domestic violence incident. Thus,

Plaintiff potentially posed a threat to Defendants and others.

As the videotape evidence also reveals, Defendants attempted to secure Plaintiff's compliance through verbal commands to stop, but Plaintiff simply disregarded such.   As the Sixth Circuit has observed, "when a subject actively resists arrest, the police can use a taser (or a knee strike) to subdue him."  *Rudlaff*, 791 F.3d at 642.   Here, Defendant Brown employed a much less forceful approach and simply tackled Plaintiff to gain his compliance after which he employed minimal force to Plaintiff so that he could secure Plaintiff in handcuffs without him fleeing yet again.   Plaintiff's complaint that he was subjected to excessive force is belied by the video evidence and his lack of serious injury. No reasonable juror could conclude that Defendants' actions violated Plaintiff's Fourth Amendment rights.   Accordingly, the undersigned recommends that Defendants Brown and Pierson are entitled to summary judgment on Plaintiff's excessive force claim.

## III.   Malicious Prosecution

Following his arrest, Plaintiff was charged with resisting and obstructing Defendants Brown and Pierson contrary to Michigan Compiled Laws § 750.81d.   (ECF No. 62-13, PageID.642-45).   Plaintiff alleges that he was maliciously prosecuted in violation of his rights.   To prevail on a claim of malicious prosecution, Plaintiff must establish the following elements: (1) a criminal prosecution was initiated against Plaintiff and Defendants made, influenced, or participated in the decision to prosecute; (2) there was no probable cause for the criminal prosecution; (3) Plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in Plaintiff's favor.  *See Jones v. Clark County, Kentucky*, 959 F.3d 748, 756

11

(6th Cir. 2020).   Plaintiff's claim fails because he cannot demonstrate that Defendants participated in the decision to prosecute; nor can he establish the absence of probable cause.

A.     Decision to Prosecute

Plaintiff argues that Defendant Brown, by providing false testimony at his preliminary examination, participated in the decision to prosecute.   Specifically, Plaintiff argues that Brown falsely testified that Plaintiff became nervous when questioned about his identity.   Plaintiff argues that because this testimony was false and "obviously integral" to the decision to prosecute, Defendant Brown participated in the decision to prosecute for purposes of his malicious prosecution claim.   Plaintiff has failed to present any evidence that Defendants Pierson or Mead were involved in the decision to prosecute.

To find that Defendant Brown participated in the decision to prosecute, Plaintiff must establish that Brown acted with "some kind of blameworthiness, something beyond mere negligence or innocent mistake."   *Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015).   Plaintiff must instead establish that Brown made "deliberate or reckless falsehoods" that resulted in Plaintiff's "arrest and prosecution without probable cause." *Ibid.* ("even false testimony is not actionable as malicious prosecution unless deliberate - i.e., given with knowledge of, or reckless disregard for, its falsity").

Even interpreting the evidence in Plaintiff favor, no reasonable juror could conclude that Defendant Brown's testimony that Plaintiff acted nervous when questioned about his identity constituted a deliberate or reckless falsehood.   A review

12

of the video evidence confirms that Plaintiff was, in fact, acting nervously and evasively throughout his brief encounter with Defendants.   Furthermore, contrary to Plaintiff's argument, he was not prosecuted because he acted nervously.   Instead, Plaintiff was prosecuted because he resisted and obstructed Defendants as the video evidence plainly demonstrates.   Thus, Plaintiff cannot establish this element of his claim.

B.     Probable Cause

Under Michigan law, to convict an individual of resisting or obstructing a police officer, the prosecution must establish that the person (1) resisted or obstructed the officer and (2) the person knew or had reason to know that the person he resisted or obstructed was a police officer.   *See, e.g., People v. Quinn*, 853 N.W.2d 383, 388 (Mich. Ct. App. 2014).   Probable cause exists where the "facts and circumstances within the officer's knowledge and of which she had reasonably trustworthy information are sufficient to warrant a prudent man in believing that the [individual] had committed or was committing an offense."   *Jones*, 959 F.3d at 756-57.

As already discussed, there existed probable cause to arrest Plaintiff for resisting and obstructing the moment Defendant Brown attempted to restrain Plaintiff.   By resisting Brown and then fleeing from Brown and Pierson, Plaintiff's actions likewise constituted probable cause to charge Plaintiff with resisting and obstructing.   The video evidence clearly establishes probable cause for Plaintiff's arrest and subsequent prosecution.   Accordingly, because Plaintiff cannot establish the elements of his claim, the undersigned recommends that Defendants Brown, Pierson, and Mead are entitled to summary judgment on Plaintiff's malicious prosecution claim.

13

## IV.    Denial of Medical Treatment

Plaintiff claims that his knee was injured during his arrest after which Defendant Mead denied his request for medical treatment.    While the Eighth Amendment does not apply to the treatment of arrestees or pretrial detainees, through the application of the Fourteenth Amendment's Due Process Clause, they are "entitled to the same Eighth Amendment rights as are other inmates."   *Daniels v. Woodside*, 396 F.3d 730, 735 (6th Cir. 2005).    The Eighth Amendment's prohibition against cruel and unusual punishment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs."   *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976); *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The analysis by which Defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious.    A "serious medical need," sufficient to implicate the Eighth Amendment, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."   *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008).

If Plaintiff satisfies the objective component, he must then demonstrate that the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, Plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004). To satisfy this part of the analysis, Plaintiff must demonstrate that Defendant acted with "deliberateness tantamount to intent to punish." *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005).

Photographs reveal that Plaintiff suffered nothing more than a minor abrasion to his left knee for which he received medical treatment at the Kent County Jail and later by the Michigan Department of Corrections. (ECF No. 62, PageID.621-24, 630-40, 659-63). There is no evidence suggesting that Plaintiff's knee abrasion constituted a serious medical injury for constitutional purposes. As courts recognize, "superficial" "cuts and abrasions" which are treatable with "over-the-counter-bandages or medications are not sufficiently serious to invoke the protection of the constitution." *Senay v. Graham*, 2019 WL 2717985 at *4 (W.D. Ky., June 28, 2019) (collecting cases). Because Plaintiff's alleged injury was not sufficiently serious to implicate the Constitution, the undersigned recommends that Defendant Mead is entitled to summary judgment regarding Plaintiff's denial of medical treatment claim.

## V.     Supervisory Liability

Finally, Plaintiff alleges that Defendant Mead is vicariously liable, in his capacity as a supervisor, for the constitutional violations he suffered by Defendants Brown and Pierson.   To prevail on this claim, Plaintiff must establish that Defendant Mead either "encouraged" the violation of Plaintiff's rights or "in some way directly participated in" such.   *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).   Plaintiff's claim fails because he cannot establish that his rights were violated during the incident in question. Accordingly, the undersigned recommends that Defendant Mead is entitled to summary judgment as to this claim.

## <u>CONCLUSION</u>

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment (ECF No. 61) be granted and this action terminated. For the same reasons underlying this recommendation, the undersigned finds that an appeal of such would be frivolous.   *Coppedge v. United States*, 369 U.S. 438, 445 (1962).   Accordingly, the undersigned further recommends that an appeal of this matter by Plaintiff would not be in good faith.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: June 2, 2021

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge

17